IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:20-CV-123-FL

| | | |
|---|---|---|
| KELLY STAFFORD, <br> GRASS ROOTS, NORTH CAROLINA, <br> SECOND AMENDMENT FOUNDATION, <br> and FIREARMS POLICY COALITION, <br> INC., <br><br> Plaintiffs <br><br> v. <br><br> GERALD M. BAKER, in his official <br> capacity as Sheriff of Wake County, <br> North Carolina, <br><br> Defendant | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | MEMORANDUM IN SUPPORT <br> OF MOTION TO DISMISS |

## STATEMENT OF THE CASE

This case was instituted by the filing of a civil rights complaint under 42 U.S.C. §1983 on or about March 27, 2020 by Plaintiffs. [DE 8]. Defendant Baker accepted service as requested by Plaintiffs on April 2, 2020. [DE 11]. The time to answer or otherwise plead has not yet expired.

Plaintiffs include an individual resident of Wake County, North Carolina and three organizations who assert their representation of groups of individuals for the purposes of protecting constitutional and civil liberties and in particular, Second Amendment rights. [DE 8, pp. 3-5]. Defendant Baker is the elected Sheriff of Wake County, North Carolina. [DE 8, p. 6].

Plaintiffs are seeking for themselves and others similarly situated, declaratory and injunctive relief against Defendant Baker, and an award of nominal damages arising from actions by Defendant to temporarily suspend acceptance and processing of pistol purchase permits and concealed handgun permits authorized under North Carolina statutory law.

Plaintiffs' assert that the actions of Defendant are in violation of the Second Amendment of the United States Constitution and North Carolina statutory law.

STATEMENT OF THE FACTS

Plaintiffs allege Defendant Baker is the elected Sheriff of Wake County North Carolina. As Sheriff, Baker's statutorily assigned duties include the acceptance and processing of both pistol purchase permits (PPP) issued pursuant to N.C. Gen. Stat. §14-403 *et. seq.*, and concealed handgun permits (CHP) pursuant to N.C. Gen. Stat. §14-415.10 *et. seq.*, and if an applicant meets the stated qualifications, to issue the respective permit.

On or about March 24, 2020, Baker announced his intention to temporarily suspend accepting new applications for both pistol purchase permits and concealed handgun permits until April 30, 2020. Plaintiffs recite that Baker's justifications for the temporary suspension were due to the widespread public health crisis and existing state(s) of emergency surrounding the spread of novel coronavirus infections and his concern for the impact on the application processes, including limiting interpersonal contact. These facts are not in dispute.

Plaintiffs assert that Baker's decision violated the mandates of the respective state statutes and the Second Amendment, entitling them to immediate and permanent injunctive relief, declaratory relief and an award of nominal damages together with attorneys' fees and costs.

§1983 CLAIM

STANDARD OF REVIEW

In order to state a claim that will survive a motion to dismiss, Plaintiffs must provide "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'". Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal cites omitted). "The plausibility standard is

not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

When a court reviews a complaint, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but a court should not consider "legal conclusions, elements of a cause of action, ... bare assertions devoid of further factual enhancement[,] ... unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir.2009) (internal citations omitted). When ruling on a Rule 12(b)(6) motion to dismiss, a court must consider documents incorporated into the complaint by reference as well as matters of which a court may take judicial notice. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

## SECOND AMENDMENT CLAIM

Plaintiffs bring their first cause of action under 42 U.S.C. §1983 seeking relief based on assertions that Defendant Baker's announcement of a temporary moratorium on the acceptance of applications for pistol purchase permits for a time period beginning on or about March 24, 2020 until after April 30, 2020 [DE 8, p. 9 ¶ 21, p. 10 ¶ 22; DE8-3, p. 3] violate Stafford's Second Amendment rights and the rights of others similarly situated. They allege their constitutional rights are violated because the temporary moratorium acts as a prohibition from "keeping, bearing, buying, selling, transferring, receiving, possessing, and/or transporting" handguns. [DE 8. pp. 11 at ¶ 28, 15 at ¶ 40].

Plaintiffs' arguments are neither factually nor legally sound.

A Plaintiff bringing an action under §1983 must establish that "the charged state actor (1) deprived plaintiff of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was performed under color of the referenced sources of state law found in the

3

statute." Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). For the purposes of this motion, Defendant does not deny that acting in his official capacity as the Sheriff of Wake County, he is a person acting under color of law for purposes of § 1983. The issue remaining is whether Plaintiffs have sufficiently alleged a deprivation of their constitutional rights to survive a motion to dismiss. The specific question is whether Defendant's temporary pause in accepting pistol purchase permit applications violated Plaintiffs' rights secured by the Second Amendment.

Since the Supreme Court's landmark decision in D.C. v. Heller, 554 U.S. 570 (2008) the Fourth Circuit has had many opportunities, beginning with their decision in United States v. Chester, 628 F3d. 673(4th Cir. 2010), to refine their analysis of Second Amendment claims. They have consistently held the appropriate standard for measuring those claims as follows:

> Like most of our sister courts of appeals, we have concluded that "a two-part approach to Second Amendment claims seems appropriate under *Heller*. Pursuant to that two-part approach, we first ask "whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee." If the answer is no, "then the challenged law is valid." If, however, the challenged law imposes a burden on conduct protected by the Second Amendment, we next "apply[ ] an appropriate form of means-end scrutiny." . . . With respect to a claim made pursuant to the First or the Second Amendment, "the level of scrutiny we apply depends on the nature of the conduct being regulated and the degree to which the challenged law burdens the right."

Kolbe v. Hogan, 849 F.3d 114, 132-33 (4th Cir. 2017).

Where the government restriction does not "severely burden the core protection of the Second Amendment, i.e., the right of law abiding, responsible citizens to use arms for self-defense in the home" intermediate scrutiny is the appropriate standard of review. *Id.* at 138.

Although Plaintiffs' Complaint involves a policy decision, the two-part test is appropriate and is the correct test to apply to any intrusion on an individual's Second Amendment rights. See Mahoney v. Sessions, 871 F.3d 873 (9th Cir. 2017) (applying the two-part analysis to a Seattle Police Department policy restricting officers use of issued firearms for self-defense); Gould v.

4

Morgan, 907 F3d. 659 (1st Cir. 2018) (two-part test applies to a law or policy affecting Second Amendment right).

For the purposes of this motion and assuming that a restriction, no matter how minor, on an individual's ability to purchase a firearm, including a handgun, imposes some burden on "conduct falling within the scope of the Second Amendment guarantee", the administration of a State mandated process for screening applicants for eligibility to be issued a permit as the means by which to legitimately acquire a handgun can be seen to impact an applicant's rights. Therefore, it is not necessary to debate the first element of the two-part test.

Plaintiffs urge this Court to apply a strict scrutiny analysis at this stage and rely on Bateman v. Perdue, 881 F.Supp.2d 709 (E.D.N.C. 2014) in support of that position. [DE 8, p. 14 ¶ 38]. Their reliance on Bateman is misplaced. The facts before the court in Bateman were substantially different from those before this Court. In Bateman "citizens [were] prohibited from engaging, outside their home, in any activities secured by the Second Amendment. They [were not allowed to] carry defensive weapons outside the home, hunt or engage in firearm related sporting activities." *Id.* at 714. Moreover, the Bateman plaintiffs were prohibited from purchasing or transporting any type of firearm or ammunition. *Id.* None of those factors are presented by Plaintiffs.

Although Plaintiffs allege that Baker's action constitutes a ban on their ability to keep, bear, possess or transport handguns, their representations are an incorrect and overly broad statement, inconsistent with a plain reading of the statutes on which they rely. The reach of the statutes that regulate applications for pistol purchase permits is restricted to a process for approving or denying an applicant's ability to "sell, give away, or transfer, or to purchase or receive" a handgun. N.C. Gen. Stat. § 14-402 (a). The statutory application process is limited in scope and

does not address keeping, bearing, possessing, using or transporting a handgun. Plaintiffs offer no independent facts that support these allegations. Neither the statutes cited by Plaintiffs, nor Defendant Baker's announced moratorium support Plaintiffs' allegations that restrictions <u>of any kind</u> have been or will be imposed on persons who either already possess a handgun or who may obtain one in the future.

The breadth and extent of the ban on protected activity in <u>Bateman</u> is substantially broader and different from the temporary moratorium on accepting applications for pistol purchase permits proposed by Defendant Baker. Moreover, because the proposed moratorium does not directly involve the possession and use of a handgun for purposes of self-defense in the home, but is limited to extending the time for accepting and reviewing applications for pistol purchase permits, it does not involve government action that would "severely burden the core protection of the Second Amendment". Therefore, intermediate scrutiny is the appropriate standard.

The operative facts before the Court as provided by Plaintiffs and upon which they base their constitutional claim are that on or about March 24, 2020, Defendant Baker was the Sheriff of Wake County and was responsible for *inter* alia, the administration of Wake County's portion of the State pistol purchase permit (PPP) application program. [DE 8, p. 6 ¶ 13]. Beginning with a press release on March 24, 2020, Defendant Baker announced his intention to impose a temporary moratorium on accepting PPP applications for processing until April 30, 2020. Completed applications which had been submitted would continue to be processed. [DE 8, p. 9 ¶ 21, p. 10 ¶ 22; DE8-3, p. 3]. At the time of Baker's announcement, North Carolina was "in the midst of a widespread public health crisis" [DE 8, p. 2 ¶ 1], and the State was in its second week of a statewide declared state of emergency due to the spread of the novel coronavirus (COVID-19). [DE 8, p.9 ¶ 20]. Baker justified his decision by citing to "a significant increase in PPP applicants and

concomitant concerns over social distancing violation by long lines of applicants." [DE 8, p. 9 ¶ 21]. This concern was also "prominently displayed on the public website Defendant Baker maintains for the Wake County Sheriff's Office". [DE 8, pp. 9-10 ¶ 22].

Other facts pertinent to this Court's intermediate scrutiny review are contained in the public record of the Wake County Superior Court and are appropriate for this Court's consideration by judicial notice. Fed. R. Evid. 201 §§ (b)(1) and (2) and § (d); Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236 (4th Cir. 1989). On the same day that Plaintiffs filed this action, an action was filed in the Superior Court of Wake County North Carolina by a different plaintiff, seeking immediate injunctive relief in the form of a court order to require Sheriff Baker, Defendant herein, "to resume processing applications for concealed carry and other firearms permits immediately". [Groo v. Wake County Sheriff's Office and Gerald Baker, Amended Complaint, case file No. 20 CVS 4400, Defendant's Motion Exhibit 1].

After a hearing, an order was signed by the Hon. A. Graham Shirley, Judge Presiding, on March 31, 2020 and was filed the same day. In the order, Judge Shirley made findings of fact that included judicial findings of the existence of a state-wide state of emergency declared by the Governor beginning on March 10, 2020, the President's declaration of a state of emergency that began on March 13, 2020 and a Wake County Proclamation of Emergency Restrictions limiting gatherings larger than 50 persons that went into effect on March 22, 2020. The Court further found that from March 10, 2020 to March 24, 2020, the date of Defendant's announcement, the Wake County Sheriff's Office received applications in numbers greater than the County's limit on gatherings exceeding 50 persons. Finally, the Court found that Defendant Baker's action to temporarily suspend the application process was due to his efforts to comply with the declared states of emergency and out of concern for the health and welfare of Wake County citizens,

7

Sheriff's Office personnel and jail inmates housed in proximity to the application processing location.

The Order entered by Judge Shirley ultimately required Defendant Baker to modify the application process to restrict or deny applicants access to the Wake County Public Safety Center, and to resume accepting applications for pistol purchase permits within 7 (seven) days of the order's date. [March 31, 2020 Consent Order, Groo v. Wake County Sheriff's Office and Gerald Baker, case file No. 20 CVS 4400, Defendant's Motion Exhibit 2].

The effect of Judge Shirley's Order was that Defendant Baker would begin accepting applications on or before April 7, 2020 rather than extending the moratorium to April 30, 2020 or beyond. The total length of the moratorium was, therefore, no more than 13 calendar days.

An application of intermediate scrutiny to these facts and all reasonable inferences drawn therefrom favorable to the Plaintiff requires the Court to determine "whether there is a 'reasonable fit'" between Defendant Baker's temporary suspension in accepting applications and a "substantial government objective". United States v. Hosford, 843 F.3d 161, 168 (4th Cir. 2016). Ordinarily the burden would be on the Defendant to show that there is an important interest served by his actions. *Id.* See also United States v. Hosford, 843 F.3d 161, 168 (4th Cir. 2016). In this instance, it is not necessary for Defendant Baker to present evidence in order for the Court to reach its determination. Plaintiffs' recitation of facts specifically include facts more than sufficient to meet Defendant's burden.

The Court at this point has for consideration on Defendant's motion to dismiss, Plaintiffs' Complaint and the exhibits incorporated therein, the North Carolina statutes cited and relied on by Plaintiffs in their complaint, as well as documents, including the Order in a related action in State court. The facts together with Plaintiff's allegations establish that Plaintiffs' complaint is

insufficient on its face to state a plausible claim against Defendant Baker for violation of rights protected by the Second Amendment.

The sole constitutional question is whether a temporary and brief delay in the ability to apply for a permit to <u>acquire</u> a handgun, as opposed to a limitation on the possession and use of a handgun for purposes of self- defense or home protection, states a facially plausible claim under Second Amendment analysis sufficient to survive a motion to dismiss under the circumstances described by Plaintiffs' complaint. Under intermediate scrutiny therefore, the question is whether Plaintiffs' Complaint sufficiently alleges that Defendant's decision to temporarily suspend the pistol purchase permit application process in the face of a public health crisis was a substantial government objective, and whether Defendant's decision reasonably fit the circumstances.

From the facts as presented, beginning in March of 2020, the nation, State and Wake County were faced with an unprecedented public health crisis caused by the deadly novel corona virus. Without treatment protocols or available immunization, the only known defense to the spread of the pandemic was to prevent social interaction and contact as much as possible. The President, Governor and County Commissioners each declared states of emergency to attempt to stem the spread of the disease. As a part of the response, all citizens were instructed to maintain appropriate social distancing while interacting in public.

In reaction to the uncertainty and public reaction to the pandemic spread, the volume of applications for pistol purchase permits increased dramatically and large numbers of applicants converged on the Wake County Sheriff's Office. The numbers of applicants congregating at the Sheriff's Office exceeded the numbers determined by public health officials to be safe and exceeded the guidelines included in proclamations of governing bodies, including the Wake County Board of Commissioners.

In response to the critical and immediate public health concern, Sheriff Baker announced that he would temporarily suspend accepting applications for permits from on or about March 24, 2020 until April 30, 2020 to allow time to reassess how to proceed further. Almost immediately, court proceedings were filed in both State and federal courts seeking immediate relief from Defendant Baker's decision. As a result of the State court proceeding, an order was entered ordering modifications to the application process and resumption of accepting applications on or before April 7, 2020. The time period that applications were not accepted was not more than 13 calendar days or 9 working days.

Plaintiffs' recite statutory time frames to support their constitutional claim [DE 8, p. 8, ¶ 18] although the statutes impose no time frame for accepting applications. [DE 8-2, p. 2]. Statutory times are of marginal relevance to Plaintiffs' constitutional claim, however, because even if Plaintiffs could establish that Defendant somehow exceeded a statutory time frame, violation of a state statute alone does not give rise to a § 1983 claim. Screws v. United States, 325 U.S. 91, 108 (1945); Clark v. Link, 855 F.2d 156, 162 (4th Cir. 1988).

Accepting Plaintiffs' complaint at face value and taken to its logical extreme, if Plaintiff's prevail without statutory or court limitation to the contrary, the absurd result could be that any time a sheriff is not accepting permits equates to a violation of Second Amendment rights. Without restriction, there would be no option to close offices for lunch, nights, weekends, holidays or events beyond the control of the sheriff or the sheriff's employees without subjecting the sheriff to claims for violating citizen's rights. However, because there is no time specified by statute in which Defendant must act, Defendant could, by way of example, elect to accept applications one day per month and comply with the statute. If Defendant were to adopt such a schedule, the interim time periods would exceed the nine working days actually suffered by Plaintiffs. Such a schedule would

not only comply with the statute but would also comply with the Second Amendment as explained herein.

The United States Supreme Court has stated that, "[d]etermining whether a complaint states a plausible claim will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft, *supra* at 679. Here, the context of Plaintiffs' complaint is singularly unique. At no time in recent history has the country been faced with a public health crisis of the magnitude presented. Whether the action of Defendant in response to the pandemic was based on a substantial governmental interest is beyond debate. It is further well within the bounds of reason and common sense that a short moratorium on taking applications for pistol purchase permits for public health reasons and the associated impact on applicant's global Second Amendment rights is at most indirect, incidental, short-term and temporary and a reasonable fit to the substantial government interest caused by the pandemic and associated public health crisis.

In a recent decision of the United States District Court for Massachusetts, Chief Judge Saylor analyzed a plaintiff's complaint for money damages and injunctive relief under the Second Amendment in response to defendant's motion to dismiss. Plaintiff challenged the impact of fees and costs imposed on his ability to obtain a license to carry permit. Using the analysis set out above, Judge Saylor concluded that the fees did not implicate the core right of self-defense in the home and applied an intermediate level of scrutiny. The court then determined that because the challenged fees were tied to a scheme directly related to public safety, they were tied to a government interest. As such, the fee survived the intermediate scrutiny standard and did not place an impermissible burden on plaintiff's Second Amendment Rights. As a result, plaintiff's

complaint failed to state a claim and was dismissed. O'Connell v. Gross, 2020 WL 1821832 (D. Mass. Apr. 10, 2020).

Like the Massachusetts case, a delay of nine working days in Plaintiffs' ability to apply for a pistol purchase permit does not place an impermissible burden on Plaintiffs' Second Amendment rights and their claims under §1983 should be dismissed.

Should the Court disagree with Defendant and determine that Plaintiffs have stated a claim, the Court should still dismiss some or all of Plaintiffs' §1983 claims as they are mooted by the State Superior Court order.

A concept basic to the jurisdiction of federal courts is mootness. Because the Court's jurisdiction "extends only to actual cases or controversies", the controversy between the parties "must exist not only at the case's inception, but for the entire duration of the proceedings". Int'l Bhd. of Teamsters, Local Union No. 639 v. Airgas, Inc., 885 F.3d 230, 235 (4th Cir. 2018). When a case or controversy ceases to exist, the litigation is moot, and the court's subject matter jurisdiction ceases to exist also. A case can become moot due either to a change in the facts or a change in the law. S.C. Coastal Conservation League v. U.S. Army Corps of Engineers, 789 F.3d 475, 482 (4th Cir. 2015)(internal cites omitted).

Here, subsequent to Plaintiffs filing their complaint but before it was served on Defendant, as set out above, the Wake County Superior Court entered its order requiring Defendant to resume accepting pistol purchase permit applications, thereby removing the basis for Plaintiffs' §1983 action.

Although jurisdictions are split on whether a claim for nominal damages in a §1983 action will survive even though the underlying basis for the action becomes moot, Defendant is aware that the Fourth Circuit has addressed the question, albeit as dicta in a footnote. Henson v. Honor

Comm. of U. Va., 719 F.2d 69, 72 FN 5 (4th Cir. 1983). Therefore, at least as to Plaintiff's claims for declaratory and injunctive relief, the Court should enter an order of dismissal for mootness, in the event their Second Amendment claim survives as plausible.

## STATE STATUTORY CLAIM

Plaintiffs' second claim seeks to bring an action for declaratory and injunctive relief only, based on allegations that Defendant Baker has violated a duty imposed on him by State statute. Plaintiffs ask the Court to exercise its supplemental jurisdiction under 28 U.S.C. §1367(a) in order to consider the State claim.

Although Plaintiffs seek to challenge Defendant's failure to accept applications for North Carolina concealed carry permits, the Complaint fails to state a claim for relief in that regard on multiple grounds and should be dismissed pursuant to F.R. Civ. Pro 12(b)(1) and 12(b)(6).

Initially, Plaintiffs have failed to plead facts sufficient to establish their standing to bring such a challenge. Unlike Plaintiff Stafford's allegations regarding her application for a pistol purchase permit, she has not alleged that she has either applied or intends to apply for a concealed carry permit. There is no allegation that any of the institutional plaintiffs' members have been denied a concealed carry permit, or that there are even any members who are residents of Wake County, North Carolina who may be in any way impacted by Defendant's actions. There is no allegation that any plaintiff has suffered injury as a result under this claim.

A fundamental requirement for standing to bring an action is that "[a] plaintiff must have suffered an 'injury in fact' an invasion of a legally protected interest which is [] concrete and particularized . . . not 'conjectural' or 'hypothetical'". Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992); White Tail Park, Inc. v. Stroube, 413 F.3d 451, 458 (4th Cir. 2005). Because

Plaintiffs' Complaint fails to allege injury to any Plaintiff, this claim should be dismissed pursuant to F.R. Civ. Pro. 12(b)(1).

Although Plaintiffs could conceivably cure their deficiencies as to standing by finding an injured party and amending their Complaint to add that party, there are additional reasons why their State law claim fails.

Plaintiffs have named Defendant Baker in his official capacity. In North Carolina,

> "[t]he doctrine of sovereign immunity provides the State, its counties, and its public officials with absolute and unqualified immunity from suits against them in their official capacity. Thus, as to county sheriffs, "[i]t is generally established that a sheriff is a public official entitled to sovereign immunity and, unless the immunity is waived pursuant to a statute, is protected from suit against him in his official capacity."!

Myers v. Bryant, 188 N.C. App. 585, 587, 655 S.E.2d 882, 885 (2008)(internal cites omitted).

Moreover, in order to state a claim against a public official, ". . . the complaint must specifically allege a waiver of governmental immunity. Absent such an allegation, the complaint fails to state a cause of action." Paquette v. County of Durham, 155 N.C. App. 415, 418, 573 S.E.2d 715, 717 (2002) (citations omitted).

Plaintiffs Complaint is silent regarding sovereign or governmental immunity or its waiver. Because it is well settled that "[a]bsent consent or waiver, the immunity provided by [governmental or sovereign immunity] is absolute and unqualified" Plaintiffs' claim as stated cannot survive against Defendant. Messick v. Catawba County, N.C., 110 N.C. App. 707, 714, 431 S.E.2d 489, 494 (1993) (overruled on other grounds by Boyd v. Robeson County, 169 N.C. App. 460, 621 S.E. 2d 1 (2005)). Therefore, this claim should be dismissed pursuant to F.R. Civ. Pro. 12(b)(6) as well.

While it is conceded that similarly to the issue of standing, Plaintiffs' could conceivably amend their Complaint to cure their failure to state a claim with regard to immunity as well, any

amendment to cure either of those issues would be futile to stating a claim that could proceed regarding the concealed carry permit process.

Included within the concealed carry permit statutes cited and relied on by Plaintiffs [DE 8, p. 6 ¶ 13], is a specific provision which provides that "[a] sheriff who issues or refuses to issue a permit to carry a concealed handgun under this Article shall not incur any civil or criminal liability as the result of the performance of the sheriff's duties under this Article." N.C.G.S. § 14-415.20. The plain language of this statute is a prohibition on Plaintiffs' ability to bring a civil proceeding against Defendant for allegations that he is unlawfully refusing to accept applications or issue concealed carry permits. This immunity is in addition to a sheriff's sovereign or governmental immunity for discretionary acts in general. It is a clear expression of the legislative intent to free a sheriff from litigation such as this and as well as claims that might otherwise arise from the administration of the concealed carry permit laws. This claim should be dismissed pursuant to F.R. Civ. Pro. 12(b)(6).

Should the Court have any question whether N.C. Gen. Stat. § 14-415.20 acts to bar Plaintiffs' statutory claims, Defendant respectfully requests the Court to decline to exercise its supplemental jurisdiction over the State claim and defer to the courts of North Carolina to interpret the intent of its own legislature. In the event of a question as to the proper construction of N.C.Gen. Stat. § 14-415.20, abstention would be appropriate because construction of a statute is a question of law. Brown v. Flowe, 349 N.C. 520, 520 S.E.2d 894 (1990). In instances where an issue is one that impacts a state policy of substantial public import and the decision of the Federal Court could be disruptive of the state's efforts to establish a policy regarding the issue, abstention, and in particular, the doctrine of Burford abstention has been recognized as appropriate. Quackenbush

v. Allstate Ins. Co., 517 U.S. 706 (1996); Virdis Development Corp. v. Board of Sup'rs of Chesterfield County Va., 92 F.Supp.3d 418 (2015).

The North Carolina concealed carry permit laws are a complex combination of interwoven and interconnected statutes that in turn incorporate by reference numerous state and federal statutes and apply many terms which are limited by special definition to the use and purposes of the statutory scheme in order to accomplish the intent of the State legislature. Furthermore, there is no case of record where a North Carolina Appellate Court has had an occasion to interpret N.C. Gen. Stat. § 14-415.20. Therefore, should there be any question from the Court as to whether N.C. Gen. Stat. § 14-415.20 constitutes a bar to Plaintiffs' claims, abstention would be prudent.

In the alternative, but for reasons similar to those supporting abstention, if the Court determines Plaintiffs' statutory claims are viable, this Court's exercise of supplemental jurisdiction, while authorized, is not warranted for reasons that follow.

Should this Court grant Defendant's motion to dismiss Plaintiffs' §1983 claims as requested above, the basis for federal jurisdiction will have been removed. In such event "the elimination of all federal claims before trial is generally a sufficient ground in itself for declining supplemental jurisdiction over pendent state-law claims". Sansotta v. Town of Nags Head, 863 F.Supp.2d 495, 514–15 (E.D.N.C.2012) aff'd in part, rev'd in part, 724 F.3d 533 (4th Cir.2013). However, even if the Court allows Plaintiffs' § 1983 claim to proceed, multiple further grounds for declining supplemental jurisdiction consistent with 28 U.S.C. § 1367 are presented.

As described above, the concealed carry permitting laws and their administrative directives are complex and are administered by public officials who are by definition, required to exercise discretion in carrying out their duties. In addition, as set out in Plaintiffs' Complaint and argued

above, the public health pandemic presented by the spread of the deadly COVID-19 virus presents exceptional circumstances, likely not contemplated during the adoption of the statutes at issue. These two factors fit well within § 1367(c)(1) and (4). Additionally, because North Carolina jurisprudence historically emphasizes that issues regarding the manner in which sheriffs carry out their duties is an issue for their county constituents, State court is the better place to determine such issues. Boyd v. Robeson Cty., 169 N.C. App. 460, 476–77, 621 S.E.2d 1, 11 (2005)( "It is up to the county electorate to determine whether the sheriff is properly administering his office."); N.C.G.S. § 1-77 (requires an action brought against a public officer for an act done by virtue of their office to be brought in the county where the cause arose.)

Additional justifications for declining to exercise supplemental jurisdiction include that Plaintiffs' state law claims are not impaired by statutes of limitation, litigation is at an early stage with minimal expenditure of federal resources, and the state dispute, if any, would of necessity be between persons who are residents of Wake County, North Carolina or who act in a representative capacity of one or more residents of Wake County, North Carolina. Burch v. NC Dep't of Pub. Safety, 158 F. Supp. 3d 449, 465–66 (E.D.N.C. 2016).

## CONCLUSION

For the reasons stated herein and the authorities cited in support thereof, Plaintiffs' Complaint fails to state a claim upon which relief may be granted. Further, Plaintiffs have failed to establish that they have standing to bring an action against Defendant for failure to carry out a duty required by state statute.

Defendant respectfully requests the Court to dismiss Plaintiffs' Complaint in its entirety for failure to state a plausible claim pursuant to F.R.Civ. Pro. 12(b)(6).

Respectfully submitted, this the 28th day of April, 2020.

>
> */s/ Paul G. Gessner*
> Paul G. Gessner
> P.O. Box 550
> Raleigh, N.C.  27602
> Tel: (919) 856-6935
> Fax: (919) 856-6874
> E-Mail: Paul.Gessner@wakegov.com
> N.C. State Bar # 18213
> *Attorney for Defendant Sheriff Gerald M. Baker*

CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing **MEMO IN SUPPORT OF MOTION TO DISMISS** was electronically filed with the Clerk of Court using the CM/ECF filing system and served via electronic transmission through the Court's facilities in accordance with Rule 5(b)(2)(D) of the Federal Rules of Civil Procedure and applicable local rules upon the CM/ECF participants:

> Edward H. Green, III, Esq.
> Coats & Bennett, PLLC
> 1400 Crescent Green, Suite 300
> Cary, NC  27518
>
> Raymond M. DiGuiseppe, Esq.
> The DiGuiseppe Law Firm, P.C.
> 4320 Southport-Supply Road, Suite 300
> Southport, NC  28461
>
> Adam Kraut, Esq.
> Firearms Policy Coalition
> 1215 K Street, 17th Floor
> Sacramento, CA  95814

This the 28th day of April, 2020.

             */s/* Paul G. Gessner
             Paul G. Gessner
             P.O. Box 550
             Raleigh, N.C.  27602
             Tel: (919) 856-6935
             Fax: (919) 856-6874